IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSE BEN LUNA,

      Plaintiff,

v.                                                     CIV 09-0353 MCA/CG

CHARLES LINDSEY,
CELSO ARANJO,
AARON VIGIL,
AARON BELL, and
OSWALDO MORA,

      Defendants.

# SECOND PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

      This prisoner civil rights matter is before the Court on a *Martinez* Report that contains hundreds of pages of exhibits. Briefing is complete. *See Docs. 37, 37-1, 37-2, 37-3, 37-4, 38, 39, 40.* The exhibits are Bates-stamped and I use those numbers for citations. *E.g., Martinez Report Exhs.* at 1. One of the exhibits is a compact disc that contains video recordings and I cite the recordings as "*Video.*" *See Doc. 38.*

      Certain facts are undisputed, including that Plaintiff intentionally set fire to his cell:

> . . . Plaintiff is a New Mexico . . . inmate who, on December 20, 2007, started a fire in his cell . . .

* * * * *

> As a *pro se* Plaintiff I will say there is no excuse for my action. I cannot justify my behavior. I have been held accountable for the destructive behavior and have been disciplined. This was the last incident. Since then, I have maintained over two years clear conduct . . . and am projected for release August 14, 2010.

*Doc. 39* at 1-2 (hereinafter "*Response*") (certain punctuation supplied for clarity). The remaining five defendants are the correctional officers who extinguished the fire and escorted Plaintiff to safety.

Having considered the parties submissions and the relevant law, I recommend that: certain claims be dismissed; the Court ascertain whether an attorney is available to represent Plaintiff; and, if the case does not settle, a jury trial be conducted on the remaining issues.

## I.  Any Demand For Injunctive Relief Should Be Stricken

Plaintiff's amended complaint seeks a declaration that Defendants engaged in unconstitutional excessive use of force, and demands compensatory and punitive damages and a jury trial. *Doc. 13* at 27 (hereinafter "*Amended Complaint*"). One boilerplate sentence of the amended complaint alludes to "irreparable" injuries and "injunctive" relief. *See id.* at 21. However, Plaintiff did not demand an injunction as relief, nor does he contest Defendants' argument that he is not entitled to such relief. *See id.* at 27; *Response* at 1-24; *Martinez Report* at 10-11. Accordingly, I recommend that the "injunction" sentence of Plaintiff's Amended Complaint be stricken, either as moot in light of Plaintiff's response or as without merit for the reasons and authorities cited by Defendants.

## II.  Plaintiff's Injuries Were Not "*De Minimus*"
## And, In Any Event,
## *De Minimus* Injury Is Not Grounds For Dismissal

It is undisputed that Plaintiff sustained injuries during the events at issue.  For example, photographs taken at the prison infirmary show Plaintiff with blood on his knees, head, ear, and face.  *See Amended Complaint* at 1, 9-10; *Martinez Report Exhs.* at 60-61.  Prison medical records document:  "abrasions" to Plaintiff's face, shoulder, knees, neck, and back; a "small skull depression" on the top of his head; "swelling" behind his ear and to his left wrist; bruising to his arm and shoulder; and that Plaintiff had "poor balance" and was "acutely aggitated (sic)."  *Martinez Report Exhs.* at 88-89.  Medical records submitted by Plaintiff show that St. Vincent's hospital treated him for "assault" and that he suffered a "shallow abrasion," "wrist swelling," and a "scalp hematoma."  *Amended Complaint* at 11-12.

It is true that not every push or shove by a prison guard will amount to a violation of the Eighth Amendment.  It is also true that Plaintiff did not suffer any broken bones or needed stitches.  Defendants thus argue that because the injuries here were "*de minimus,*" the case should be dismissed. *See Doc. 37* at 9.  The very case Defendants cite, however, itself holds that the " blows directed at [the inmate], which caused bruises, swelling, loosened teeth, and a cracked dental plate, ***are not*** *de minimis* for Eighth Amendment purposes."  *Hudson v. McMillian,* 503 U.S. 1, 10 (1992) (emphasis added).  Moreover, the question in *Hudson* was whether "force against a prisoner may constitute cruel and unusual punishment when the inmate ***does not*** suffer serious injury" and the Court answered "yes."  *Id.* at 4 (emphasis added).

To the extent there was any doubt about the scope of *Hudson,* the Court recently reversed a decision that dismissed a prisoner's excessive use of force action because the injuries were "*de minimus.*"  *Wilkins v. Gaddy,* ___ U.S. ___, ___, 130 S. Ct. 1175, 1178 (2/22/10) (per curiam).  Aside from noting that the Tenth Circuit is one of the circuits that has rejected a "*de minimus*" threshold, the *Wilkins* decision reiterated that when

> prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. . . .
>
> * * * * *
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. . . .
>
> * * * * *
>
> The Fourth Circuit's strained reading of *Hudson* is not defensible.  This Court's decision did not, as the Fourth Circuit would have it, merely serve to lower the injury threshold for excessive force claims from "significant" to "non-de minimis" - whatever those ill-defined terms might mean.  Instead, the Court aimed to shift the "core judicial inquiry" from the extent of the injury to the nature of the force - specifically, whether it was nontrivial and was applied . . . maliciously and sadistically to cause harm. . . .  To conclude, as the District Court did here, that the absence of "some arbitrary quantity of injury" requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry. . . .

*Id.* at 1178-79 (other internal quotations and citations omitted); *see also id.*, n.2 (citing *United States v. LaVallee,* 439 F.3d 670 (10th Cir. 2006), which holds "we decline to adopt a rule today, which we believe would be inconsistent with *Hudson*, that permits an officer to beat an inmate so long as the resulting injuries are neither permanent nor

require medical attention."). Plainly, there is no basis to grant Defendants a dismissal based on their *"de minimus"* argument.

That does not mean that the extent of Plaintiff's injuries is wholly irrelevant. To prevail on his excessive use of force claim, Plaintiff "will ultimately have to prove not only that the assault actually occurred but also that it was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline." *Wilkins,* 130 S. Ct. at 1180 (internal quotations and citation omitted). The degree of injury is "one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Id.* at 1178 (internal quotations and citation omitted); *see also LaVallee,* 439 F.3d at 688 ("we recognize that the degree of injury may be highly relevant to the determination of the unreasonableness of the force used"); *id.* at 687 (*Hudson* explained that 'the extent of injury suffered by an inmate is [but] one factor that may suggest' whether the force applied was necessary or wanton"). Plaintiff's minimal injuries may also have consequences for recovery of damages.[1]

### III. Excessive Use Of Force Claims

Defendants ask that the case be dismissed or summary judgment entered in their favor. *See also Martinez Report* at 1, 11. For summary judgment purposes, a *Martinez* Report is treated as an "affidavit." *E.g., Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir. 1992). Plaintiff's Amended Complaint concludes with a "declaration under

---

[1] Plaintiff demands $500,000 in compensatory damages "against each defendant, jointly and severally," plus $500,000 in punitive damages "against each defendant." *Amended Complaint* at 27. He thus hopes to recover millions of dollars, but "the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." *Wilkins,* 130 S. Ct. at 1180.

penalty of perjury" and, therefore, it too constitutes an "affidavit" for *Martinez* Report purposes.  *See Amended Complaint* at 28; *see also e.g., Gonzalez-Liranza v. Naranjo,* 2000 WL 488476 at * 2 (10th Cir. 2000) ("When, as here, a plaintiff's complaint is based on facts within his personal knowledge and has been sworn [to] under penalty of perjury, it is to be treated as an affidavit.").  Plaintiff's response to the *Martinez* Report also contains a notarized affidavit.  *See Doc. 39* at 12.

There are two distinct phases in the chain of events where Plaintiff claims he was beaten for no reason.  The dividing point for these two phases was when he was led out of the housing unit and taken through a "sally port" system to the medical unit.  The video recordings are from the housing unit only.  There is no video recording showing what occurred after Plaintiff was led out of the housing unit door.

I refer to the two phases as the "housing unit" events and the "sally port" events.  Also, the "housing unit" events contain three stages that are distinct for analytical purposes.  The first stage occurred while the officers were trying to put out the fire and subdue Plaintiff.  The second or "interim" stage occurred after Plaintiff was subdued and in handcuffs, but before he was escorted out of his cell.  The last stage occurred when the officers escorted Plaintiff down a flight of stairs from his cell and out of the housing unit.  I call these the "subduing,""interim," and "escort" stages.

I recommend that the "subduing" and "escort" stages be dismissed because, even taking Plaintiff's allegations as true, he is not entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c)(2).  Conversely, I recommend that the claims regarding the "interim" stage and the sally port events not be dismissed because they turn on credibility issues.  *E.g.,Gee v. Estes,* 829 F.2d 1005, 1007 (10th Cir. 1987) ("There are

limits, however, to what the court may do on the basis of a *Martinez* report; we have held, for example, that magistrates and judges may not make credibility determinations solely from conflicting affidavits."); *Gonzalez-Liranza,* 2000 WL 488476 at * 2 ("We have held on numerous occasions that if the facts described in a *Martinez* report conflict with those set out in such a verified complaint, summary judgment may not be granted because such a conflict creates an issue of fact.").

### A. Any Claims Directed At The "Subduing" And "Escort" Stages Of The "Housing Unit Events" Should Be Dismissed

The door to Plaintiff's top-tier cell was positioned almost directly in front of the stairs. Because of the intense smoke, the positions of the cameras, officers moving in and out of the area, and the quality of the videos, it is not possible to see what happened inside the cell. Although Plaintiff sometimes refers to "exiting" his cell, *see e.g., Response* at 3, he did not come into view on the video recordings until he was at the top of the stairs. If anything occurred in the small area between the door to the cell and the stairs, it was not visible on the recordings. *See Video*.

According to Defendants, while they were trying to extinguish the flames, Plaintiff was unresponsive so they opened his cell door. *Martinez Report Exhs.* at 2.[2] When they approached, Plaintiff "jumped up and ran towards the Officers swinging with a closed fist and kicking." *Id.* In response, Defendant Lindsey struck Plaintiff "in the back of the head" with a fire extinguisher, which "did not stop [Plaintiff] and he continued to

---

[2] The quotations in this paragraph are taken from the memorandum from Captain Tim Hurzar to Deputy Warden Lawrence Jaramillo dated 12/20/07. *Martinez Report Exhs.* at 2-4. Other exhibits recount the essentially the same facts. *See, e.g., id.* at 101-05 (memo dated 12/20/07 to Warden Anthony Romero); *id.* at 116-18 (memo dated 1/14/08 to General Counsel Jim Brewster); *id.* at 179-81 (affidavit of Defendant Vigil).

charge toward the officers." *Id.* Defendant Aranjo then used his fire extinguisher to push Plaintiff back into the cell, which "also failed to stop [Plaintiff]," so Defendant Mora spayed mace into Plaintiff's face, which likewise "seemed not to slow [him] down." *Id.* at 3. Finally, Defendant Vigil grabbed Plaintiff in a "bear hug" and then a "headlock," took Plaintiff "to the ground," and "pinned [him] to the floor" so he could be handcuffed. *Id.*

    I do not believe Petitioner is actually challenging the "subduing" and "escorting" stages as involving excessive use of force. This is particularly so given his version of events in his response to the *Martinez* Report. His version of what the officers did to subdue him in the cell area are consistent with theirs, and his description of how he was led down the stairs and out of the housing unit is consistent with the videotape. *See Response* at 10-11. Also, he specifically admits that:

- while he was in his burning cell, "Defendants were 'fighting a fire and trying to deal with an out of control inmate.'" *Response* at 2 (quoting *Martinez Report* at 2).

- even though he was not feigning incapacitation, he had his head "near the toilet . . . covered . . . with a blanket," *Response* at 10;

- he tried to exit his smoking cell in a "defensive" posture, swinging "at the fire extinguisher" and with "a closed fist in Defendant Lindsey's direction," *id.*;

- "it is true force was necessary to gain control of Plaintiff," *id.* at 3; and

- "Defendant Aaron Bell held onto the cuffs twisting them and in doing so had Plaintiff's full compliance," *id.* at 4.

    Even if Plaintiff contends that the officers used excessive force during the subduing and escort stages, I recommend that his claims be dismissed. As the video recordings memorialize, the officers plainly were acting in good faith to restore order in

precarious circumstances by extinguishing the fire Plaintiff started, saving Plaintiff's life, and keeping themselves from being injured.  Because of the smoke, the officers could not have been sure if Plaintiff was armed when he admittedly acted aggressively and attacked them.  Even if they used their fire extinguishers and mace, and had to wrestle with Plaintiff to keep him from charging out of his cell and to put him in restraints, I cannot find that the officers' conduct was excessive.  Furthermore, in the ten-second or so portions of the videotape where Plaintiff is led out of the smoke in handcuffs and down the stairs, he is not wearing a shirt and his head is shaved.  The two video recordings, though admittedly not entirely clear, do allow the viewer to plainly see Plaintiff walking of his own accord in handcuffs.  They also allow the viewer to see Plaintiff's legs, chest, head, and part of his back.  In contrast to the photographs that show bloody gashes and scrapes, no blood is visible anywhere on Plaintiff in the video recordings. *See Video* (at time-stamp 1:29:00 through 1:29:10).  On the undisputed facts then, I find that Plaintiff cannot meet his burden of showing that the officers carried out their efforts to subdue him "maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline."

As for how he was escorted, the videotapes reveal that an officer was holding Plaintiff's handcuffs with an upward pressure to keep control and Plaintiff was leaning a bit forward.  Even if Plaintiff was uncomfortable, the videos establish that his arms were not in an extreme position and that he was not subjected to pushing, shoving or any untoward physical pressure while he was led down the stairs and through the housing unit door.  Nor did he appear to be in any pain.  Any escort stage claim should be dismissed because of what the video plainly shows, as was the *Tindell* case where the

inmate alleged that an officer:

> forcefully yanked on a tether attached to Plaintiff's handcuffs, causing cuts, bleeding and swelling on Plaintiff's wrists.  Defendants, as noted above, have provided a video of the entire incident (Doc. 74, Ex. A).  The video shows Plaintiff placing his hands in the food slot on the cell door, and his hands are then handcuffed behind his back.  A leather tether is attached to the cuffs and held by one of the guards, who then leads Plaintiff from the cell.  After Plaintiff's property is inventoried, Plaintiff is again placed in his cell, and he is directed by Lt. Crumb to put his hands in food slot, so that the handcuffs can be removed.  Plaintiff is seen turning to his right, at which point Lt. Crumb directs him to comply, and appears to pull on the tether (the tether is out of view).  Plaintiff is clearly forced by Lt. Crumb's action to turn his back as his hands are drawn toward the wicket, ***but there is no indication in the video that the force was sufficient to cause Plaintiff any visible distress.***
>
> * * * * *
>
> In an Eighth Amendment excessive force claim, summary judgment in favor of a defendant is appropriate where the evidence, viewed in the light most favorable to the Plaintiff, does not support "a reliable inference of wantonness in the infliction of pain." . . .
>
> ***No reasonable finder of fact could view the video of this incident and find that Lt. Crumb acted maliciously or sadistically to cause harm to Plaintiff.***  The video makes clear that Plaintiff, rather than standing still to permit the handcuffs to be removed, turned to his side and began making (not entirely audible) statements to Lt. Crumb.  Lt. Crumb ordered Plaintiff to comply just prior to pulling on the tether.  Of course, even Plaintiff's initial failure to comply would have been sufficient to warrant some use of force in order for Lt. Crumb to place his hands in the necessary position. Thus, ***there was clearly a justification for the use of some force, and the amount of force used was clearly reasonable under the circumstances.  It is certainly not such that a reasonable jury could make the necessary inference of malice and intent to cause pain.***

*Tindell v. Beard,* 2009 WL 1579541 at ** 3-4  (W.D. Pa.) (emphasis added), *aff'd,* 351

Fed. App'x 591, 596 (3rd Cir. 2009) ("The video shows that Tindell did not suffer any

physical distress, and a medical report indicates that he had no visible swelling or

injuries on his right wrist, although he did complain of shoulder pain. . . .   no reasonable

finder of fact could view the video of the incident and determine that Crumb acted maliciously and sadistically. Rather, a reasonable jury would have to conclude that force was reasonable under the circumstances and, therefore, summary judgment was proper on this claim.").

Accordingly, I recommend that, if the "subduing" and "escorting" aspects of the housing unit events are at issue, they be dismissed.

### B. The "Interim" Aspect Of The "Housing Unit" Events Should Go Forward

As I read Plaintiff's submissions, his true complaint of excessive force concerns what occurred **after** he was subdued. For example, Plaintiff's position is that "while it is true force was necessary to [initially] gain control of [him] . . . under *Hudson* . . . even if the use of force is justified, it cannot be applied maliciously and sadistically." *Response* at 3. He also cites a decision a district court decision proposition that once the disturbance is over, no amount of force is justified. *See id.*³

It is not entirely clear whether all of the remaining allegations concern events that took place off-camera in the sally port area. Plaintiff can clarify later. At this juncture, the emphasized words below support the inference that a punch was used in the

---

³ Although he cites, *Jones v. Huff,* 789 F. Supp. 526 (N.D.N.Y. 1992), the quote he attributes to *Jones* is actually from another decision:

> Even if Ridley were the original aggressor, that fact does not necessarily entail the further conclusion that his jailers did not respond with excessive force. *Williams v. Liberty,* 461 F.2d 325 (7th Cir. 1972). While prison officials should be afforded broad discretion in maintaining order and discipline within the prison walls, we do not think that any amount of force is justified, especially if the threat of disorder or disobedience has subsided. Only reasonable force under the circumstances may lawfully be employed.

*Ridley v. Leavitt,* 631 F.2d 358, 359-60 (4th Cir. 1980).

smoke-filled cell area after Plaintiff was restrained but before he was escorted down the stairs.  That is, Plaintiff asserts that when he

> was already in restraints . . . one of the c/o's sat on my back and began **punching me** behind my head and right ear.
>
> It's unclear as to who actually punched me while I was down and in restraints . . . **because of the smoke and Phase IV mace.  There were several c/o's with their hands on me** including Defendant Lindsey and Defendant(s) Aranjo and Mora.

*Response* at 10.  A punch would not have resulted in injuries visible on the video recordings.[4]  Furthermore, Plaintiff also states that an inmate who has since been paroled witnessed the "force used on the top tier."  *Response* at 4.

Plaintiff is attempting to locate the parolee to secure an affidavit, and thus asks the Court to deny Defendant's request for dismissal under Federal Rule of Civil Procedure 56(f).  *See id.* at 4-5, 10.  Other reasons besides the lack of the parolee's affidavit preclude dismissal, however.  The Court appreciates that the *Martinez* Report is exceptionally comprehensive, well-argued, and supported.  Similarly, Defendants' reply could not more clearly and exhaustively detail the reasons why Plaintiff's assertions cannot be viewed as not credible.  *See Doc. 40.*  Nevertheless, this Court cannot use a *Martinez* Report or a summary judgment posture to resolve issues of fact and credibility.  Because it is disputed whether an officer beat Plaintiff after he was subdued and restrained and not clear which Defendant injured him, Defendants are not

---

[4] *Compare Amended Complaint* at 5-6 ("**Immediately** after putting the Plaintiff in full restraints the Defendants resumed the beating . . . Defendant . . . Martinez arrived . . . and drove his knee into the Plaintiff's back and stabbed Plaintiff in the back of his head with a brass food port key leaving a puncture wound at the back of his head that **bled profusely**.").

entitled to judgment as a matter of law on any "interim" stage claim Plaintiff is raising.

### C.  Likewise, The "Sally Port" Events Should Go Forward

According the Defendants, while in the medical sally port area, Plaintiff again became combative, so Defendants Bell and Mora had to subdue him by use of a "tightened grip," "a burst of OC . . . in the facial area," and a "[take] down to the ground face first." *Martinez Report Exhibits* at 3.  They then escorted him to the prison medical unit "where he was treated by medical staff" who "determined that [Plaintiff] would need to be take to St. Vincent's hospital for further medical treatment." *Id.*  Defendants do not describe the injuries Plaintiff sustained in the sally port.  A comparison of the visibly-unscathed Plaintiff being escorted through the housing unit door to the photographs and documented injuries taken at the medical unit suggests that quite a brawl ensued.

According to Plaintiff, after they exited the housing unit he could not see or breathe well because of the mace, was leaning forward because Defendant Bell holding onto his handcuffs and had also grabbed his neck at this point, and thus  "at no time after being restrained did I resist or be combative." *Response* at 10; *see also id.* ("I did not swing an elbow or attempt to kick an staff after exiting the housing unit").  He asserts that the officers nevertheless picked him up by his arms and legs and began to carry him, "slamming [his] head into walls and clipping [his] shoulder on a gate," *id.* at 10 ; *see also id.* at 4 (same).  Defendants Bell and Mora also allegedly "slammed [Plaintiff[ into the ground, dragging me under the exhaust of a running transport van and macing me again with Phase IV."  *Id.* at 11.[5]  He claims that he was maced in his "eyes,

---

[5]  He implicates two other officers in this regard, Cody Martinez and Eugene Martinez, but they have been  dismissed for Plaintiff's failure to cure by supplying their addresses.  *See*

mouth, ears, nose and at the small of his back onto his anus" and that "there was so much Phase IV mace that the nurses and Drs. at St. Vincentes (sic) emergency room had a hard time examining Plaintiff [and] [e]ven other patients in the emergency room were affected." *Id.* at 5. He further claims that during this time an officer beat him the face and kneed him in the back to the extent that a nurse and Defendant Vigil directed the officer to stop. *Id.* at 10.[6] Defendant Bell may also have fallen on Plaintiff on him on purpose. *Compare id.* at 11 ("supossedly (sic) 'fell' on me afer losing his balance."), *with id.* at 5 ("as a *pro se* Plaintiff I'll say **I do not recall** Defendant Aaron Bell losing balance and falling on me.") (emphasis added).

As with the cell events, Plaintiff asserts that an inmate and a nurse were witnesses to the sally port use of force, he is trying to locate them, and asks the Court to use Rule 56(f) to deny dismissal. *See Response* at 4. As before, the factual and credibility issues concerning whether Plaintiff was combative, preclude dismissal of the sally port events claim.

## IV. Referral To The *Pro Bono* Selection Committee

Plaintiff is proceeding *in forma pauperis* under 28 U.S.C. § 1915. *See Doc. 8*. Under § 1915(e)(1), this Court "may request an attorney to represent any person unable to afford counsel." Although "[p]risoners alleging civil rights violations have no constitutional right to counsel . . . the district court may appoint counsel if it determines doing so would be appropriate." *Hoffman v. Martinez,* 92 Fed. App'x 628, 633-34 (10th

---

*Docs. 32, 36.*

[6] The officer was Cody Martinez, who has been dismissed. *See supra* note 5.

Cir. 2004) (citing *Bethea v. Crouse,* 417 F.2d 504, 505 (10th Cir. 1969)); *see also e.g., Pinson v. Equifax Credit Information Servs., Inc.,* 316 Fed. App'x 744, 749 (10th Cir. 2009) (citing *Johnson v. Johnson,* 466 F.3d 1213, 1217 (10th Cir. 2006) (per curiam)). The fact that Plaintiff has demanded a jury trial is not necessarily conclusive. *See Rucks v. Boergermann,* 57 F.3d 978, 979 (10th Cir. 1995) (affirming denial of counsel to pro se litigant where case was tried to jury and listing factors to consider in "whether to appoint counsel, including 'the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant" ability to present his claims, and the complexity of the legal issues raised by the claims.") (quoting *Williams v. Meese,* 926 F.2d 994, 996 (10th Cir. 1991)"). But, "the restraints placed upon [a Plaintiff] by [his or her] confinement" is a factor to consider. *Tabron v. Grace,* 6 F.3d 147, 156 (10th Cir. 1993) (also cited in *Rucks* for factors to be considered).

This Court has a *pro bono* selection committee that can ascertain whether an attorney would be willing to accept the case without charge. *See* DISTRICT OF NEW MEXICO, PRO SE LITIGANT GUIDE at 10. Given that Plaintiff is presently incarcerated, I find it appropriate to refer the case to the committee to ascertain whether an attorney would be willing to take the case.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1. To the extent Plaintiff has requested injunctive relief, the demand be stricken from his Amended Complaint.

2. Defendants' request for dismissal or summary judgment be granted in part;

3. This matter proceed on allegations concerning the "interim" stage of the housing unit events and "sally port" events only;

4.  This matter be referred to Court's *pro bono* selection committee for possible appointment of counsel; and

5.  After the Court attempts to secure counsel for Plaintiff and ascertains whether the parties desire to engage in settlement negotiations, the action proceed to trial on the issues as narrowed above.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE